EXHIBIT 2



COPY
SERVE ON DEFENDANT

**IN THE CIRCUIT COURT OF
COVINGTON COUNTY, ALABAMA**

| | | |
|---|---|---|
| PHYLLIS MCCORD | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO.:** |
| | § | |
| G. D. SEARLE, LLC; | § | CV-05-103 |
| PHARMACIA CORPORATION; | § | |
| MONSANTO COMPANY; and | § | |
| PFIZER, INC | § | |
| | § | |
| DEFENDANTS. | § | |

DAILY INTAKE

PFIZER LITIGATION GROUP

**SUMMONS**

    This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

    **NOTICE TO:**    PFIZER, INC.
                    c/o The Corporation Company, Registered Agent
                    2000 Interstate Park Drive, Suite 204
                    Montgomery, AL 36109

    The Complaint, which is attached to this summons, is important and you must take immediate action to protect your rights. You are required to mail or hand-deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

                **NAVAN WARD, JR.**
                **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
                **Post Office Box 4160**
                **Montgomery, Alabama 36103-4160**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

                                _Roger S. Powell_
             **FILED IN OFFICE**         Circuit Clerk

DATED:     APR 1 8 2005

IN THE CIRCUIT COURT OF
COVINGTON COUNTY, ALABAMA

PHYLLIS MCCORD                          §
                                        §
        PLAINTIFF,                      §
                                        §
VS.                                     §          CIVIL ACTION NO. CV05 103
                                        §
G. D. SEARLE, LLC.                      §
(hereinafter "Searle") a subsidiary of  §
 PHARMACIA CORPORATION,                 §
(hereinafter "Pharmacia"), a Foreign    §
Corporation; MONSANTO COMPANY;          §
PFIZER, INC.; and fictitious Defendants §
A, B, C and D being those persons, firms §
or corporations whose actions, inactions, §
fraudulent suppression, fraud, scheme to §
defraud and/or other wrongful conduct   §
caused or contributed to the Plaintiff's §
injuries and damages, and whose true    §
names and identities are presently      §
unknown to the Plaintiff but will be    §          FILED IN OFFICE
substituted by amendment when           §
ascertained,                            §          APR 1 8 2005
                                        §
        DEFENDANTS.                     §                        CLERK



## COMPLAINT

### TRIAL BY JURY IS REQUESTED

1.      This is a civil action brought by Plaintiff, PHYLLIS MCCORD, for injuries

resulting in heart attack. Plaintiff was prescribed and used the prescription medication BEXTRA

(Valedecoxib). This action seeks monetary damages for personal injuries pursuant to AL Code

Ann. Sec. 11-7-13, damages caused by the drugs named herein and ingested by Plaintiff.

2.      Plaintiff, PHYLLIS MCCORD is an adult resident of Covington County,

Alabama.

1

3.      Plaintiff, PHYLLIS MCCORD, was an adult resident of Covington County, Alabama at the time of her injury.

4.      Defendant G. D. Searle LLC. (hereinafter "Searle") is a subsidiary of Pharmacia Corporation, and is upon information, knowledge and belief an Illinois Corporation, and is registered to do business in Alabama.  As such, Defendant Searle can be served through its registered agent: The Corporation Company; 2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109. At all times relevant hereto, Searle as a subsidiary of Pharmacia Corporation and Pharmacia Corporation (hereinafter "Pharmacia"); at all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valedecoxib).

5.      Defendant Pharmacia Corporation is a Delaware Corporation licensed and registered to do business in Alabama and can be served through its registered agent:  The Corporation Company; 2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109.

6.      Defendant Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia and is a Delaware Corporation.  At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Bextra (Valedecoxib).  Defendant Monsanto is licensed and registered to do business in Alabama, and may be served through its registered agent: CSC Lawyers Incorporating Service, Inc.; 150 South Perry Street; Montgomery, Alabama 36104.

7.      Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Bextra (Valedecoxib). Defendant Pfizer is licensed and registered to do business in Alabama and may be served through its registered agent: The Corporation Company;

2

2000 Interstate Park Drive, Suite 204; Montgomery, Alabama 36109.

8.     Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have done business in Covington County, Alabama, either directly or by agent, and have thus availed themselves of this jurisdiction.

9.     The Plaintiff's claims accrued in whole or in part in this judicial district and the Plaintiff resided in this judicial circuit at the time of her injury.  Some of these Defendants are foreign corporations, which have been and are currently engaged in business, directly or by authorized agent, in this judicial district.  Venue and jurisdiction are therefore proper.  The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.     Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies.  Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug.     Defendants Searle, Pharmacia and Pfizer (hereinafter "Defendants") encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects.  These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements.  These Defendants did this to increase sales and profits.

11.     At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of

3

FILED IN OFFICE

APR 1 8 2005

fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

## BACKGROUND

12.    Bextra is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug.    Defendants Searle, Pharmacia and Pfizer (hereinafter "Defendants") encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

13.    At all times relevant hereto, the Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

14.    This Complaint seeks redress for damages sustained by PHYLLIS MCCORD, resulting from Phyllis' use of Bextra (Valedecoxib), manufactured and sold by Pharmacia, G.D. Searle, Monsanto and Pfizer, the Defendants herein.

FILED IN OFFICE

APR 1 8 2005

4

15.    PHYLLIS was 68 years old on or about June 2002, when she was prescribed Bextra (Valedecoxib).  On or about October 2003, she suffered a heart attack due to the use of Bextra (Valedecoxib).

16.    The damages sought herein are the direct and proximate result of Defendants' wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valedecoxib).

17.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valedecoxib) throughout the United States.

18.    Had Defendant properly disclosed the risks associated with using Bextra (Valedecoxib), PHYLLIS would not have taken it for treatment of pain associated with injury.

19.    This action is being brought in the Circuit Court of Covington County, because the amount of recovery sought exceeds the jurisdictional levels of all lower courts.

<u>FIRST CAUSE OF ACTION</u>
<u>NEGLIGENCE</u>

20.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

21.    Defendants, directly or indirectly, negligently and/or defectively designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valedecoxib).

22.    At all times material hereto, Defendants had a duty to users and/or consumers of Bextra (Valedecoxib), including Plaintiff, PHYLLIS MCCORD, to exercise reasonable care in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization,

FILED IN OFFICE

APR 1 8 2005

5

licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valedecoxib).

23.    Defendants breached that duty and were negligent in the design, testing, inspection, manufacture, assembly, development, labeling, sterilization, licensing, marketing, advertising, promotion, sale, packaging, supply and/or distribution of Bextra (Valedecoxib) in that: Bextra (Valedecoxib) was defective when put on the market by Defendants; that with such defect, Bextra (Valedecoxib) was reasonably certain to be dangerous when put to normal use; and that Defendants failed to use reasonable care in designing or making Bextra (Valedecoxib) or in inspecting it for defects.  Specifically, Defendants breached their duty by, among other things:

a.    Failing to include adequate warnings that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, to the potential risks and serious side effects of the drug;

b.    Failing to adequately and properly test and inspect the drug before placing the drug on the market;

c.    Failing to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death.

d.    Failing to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, of the potential risks and other serious side effects associated with the drug, including, among other things, heart attack, stroke, life threatening allergic and/or skin reactions and/or death;

e.    Failing to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the significant risks associated with the use of the drug;

6

FILED IN OFFICE

APR 1 8 2005

*[signature]*

CLERK

f.    Failing to recall and/or remove the drug from the stream of commerce despite the fact that Defendants knew or should have known of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug;

g.    Encouraging misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Phyllis, in order to make a profit from sales.

24.    Defendants knew or should have known that Bextra (Valedecoxib) caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware.    Defendants nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Bextra (Valedecoxib) knowing that there were safer methods for pain relief.

25.    As a direct, legal, proximate and producing result of the negligence of Defendants, PHYLLIS sustained substantial injuries including, among other things, a heart attack.  This injury caused extensive pain and suffering and severe emotional distress and substantially reduced Phyllis' ability to enjoy life.  In addition, Defendants' negligence caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

26.    As a direct, legal, proximate and producing result of the negligence of Defendants, PHYLLIS was injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

27.    As a direct, legal, proximate and producing result of the negligence of Defendants, PHYLLIS required reasonable and necessary health care treatment and services and had incurred expenses therefore. Defendants' negligence was a contributing cause of Plaintiff's injuries and Plaintiff's economic and non-economic loss. As a result of Defendant's negligence, Plaintiff has suffered and will continue to suffer.

THE OFFICE

APR 1 8 2005

7

28.    By reason of the foregoing, Plaintiff was damaged by the negligence and wanton and willful recklessness of the Defendants. The amount sought herein exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction over this matter.

SECOND CAUSE OF ACTION
STRICT PRODUCTS LIABILITY
DEFECTIVE DESIGN

29.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

30.    At all times material hereto, Defendants have engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the drug Bextra (Valedecoxib), which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff.

31.    At all times material hereto, Bextra (Valedecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

a.    When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

b.    The drug was insufficiently tested;

c.    The drug caused harmful side effects that outweighed any potential utility;

d.    The drug was not accompanied by adequate labeling or instructions for use to fully apprise the medical, pharmaceutical and/or scientific communities, and users



FILED IN OFFICE

APR 1 8 2005

CLERK

8

and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with its use;

e.    In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Bextra (Valedecoxib) should not have been marketed in that condition.

32.    At all times the drug Bextra (Valedecoxib) was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

33.    At all times, PHYLLIS used Bextra (Valedecoxib) for its intended or reasonably foreseeable purpose.

34.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valedecoxib), Plaintiff sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, the defective and unreasonably dangerous condition of Bextra (Valedecoxib) caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

35.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valedecoxib), Plaintiff was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries, caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

36.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of Bextra (Valedecoxib), Plaintiff, PHYLLIS MCCORD,

FILED IN OFFICE
APR 1 8 2005
*CLERK

9

required reasonable and necessary health care treatment and service and had incurred expenses therefore.

37.    By reason of the foregoing, PHYLLIS was damaged by the wanton and willful recklessness of the Defendants, who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY
## FAILURE TO WARN

38.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

39.    Bextra (Valedecoxib) was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, to the dangerous risks and reactions associated with Bextra (Valedecoxib) when used for its intended or reasonably foreseeable purpose.  Those dangerous risks and reactions included, but were not limited to, heart attack, stroke, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects.

40.    At all times, PHYLLIS used the drug for its intended or reasonably foreseeable purpose.

41.    PHYLLIS could not have discovered any defect in the drug through the exercise of care.

42.    Defendants, as manufacturers of a prescription drug, is held to the level of knowledge of an expert in the field.

43.    The warnings that were given by Defendants were not accurate or clear and/or were ambiguous.

FILED IN OFFICE

APR 1 8 2005

10

44.    Defendants had a continuing duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of Bextra (Valedecoxib).

45.    As a direct, legal, proximate and producing result of Defendant's failure to warn, PHYLLIS sustained harm, including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Phyllis' ability to enjoy life. In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

46.    As a direct, legal, proximate and producing result of Defendants' failure to warn, PHYLLIS was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

47.    As a direct, legal, proximate and producing result of Defendants' failure to warn, PHYLLIS required reasonable and necessary health care treatment and services and had incurred expenses therefore.

48.    By reason of the foregoing, PHYLLIS was damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

### FOURTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

49.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

50.    Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Bextra.

FILED IN OFFICE

APR 1 8 2005

*Romd A. Prmr*
CLERK

11

51.     Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product, Bextra.

52.     Bextra does not conform to the express representations made through the Defendants' advertising and marketing efforts

53.     Bextra does not conform to the express representations made by Defendants' agents/sales representatives.

54.     Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiff.

55.     Wherefore, this Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

56.     Plaintiff repeats and realleges each of the allegations contained in the Complaint.

57.     Defendant is a "merchant" as defined in *Alabama Code Annotated* § 7-2-104.

58.     Bextra (Valedecoxib) is a "good" as defined *Alabama Code Annotated* § 7-2-105.

59.     At the time that Defendants designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Bextra (Valedecoxib), Defendants knew of the intended, reasonably foreseeable and/or ordinary use of Bextra (Valedecoxib) and impliedly warranted the drug to be of merchantable quality and safe and fit for such use.

60.     Phyllis, in ingesting Bextra (Valedecoxib), reasonably relied upon the skill and judgment of Defendants as to whether Bextra (Valedecoxib) was of merchantable quality and safe and fit for its intended, reasonably foreseeable and/or ordinary use.

FILED IN OFFICE

APR 1 8 2005

*[signature]*

CLERK

12

61.    In breach of the implied warranty given by Defendants, Bextra (Valedecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because the product was and is unmerchantable, in a defective condition and unreasonably dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was intended as described above.

62.    In breach of the implied warranty given by Defendants, Bextra (Valedecoxib) was not of merchantable quality or safe or fit for its intended, reasonably foreseeable and/or ordinary use because, among other things:

a.    Use of Bextra (Valedecoxib) Phyllisd a risk of, among other things, heart attack, stroke and/or death and other serious and life threatening side effects;

b.    Defendants failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, of the potential risks and serious side effects of the drug;

c.    Defendants failed to provide adequate post-marketing warnings or instructions after Defendants knew or should have known of the potential risks and serious side effects associated with the use of the drug.

63.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, PHYLLIS sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress and substantially reduced Phyllis' ability to enjoy life.  In addition, Defendants' failure to warn caused Plaintiff to expend substantial sums of money for medical, hospital and related care.

64.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, PHYLLIS has been injured in health, strength and activity and suffered physical injuries as well as mental anguish.  All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injuries and damages.

13

65.    As a direct, legal, proximate and producing result of Defendants' breach of warranty, PHYLLIS required reasonable and necessary health care treatment and services and had incurred expenses therefore.

66.    As a result of Defendant's breach of warranty, Plaintiff has suffered and will continue to suffer.

67.    By reason of the foregoing, PHYLLIS has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff.  The amount sought herein exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

SIXTH CAUSE OF ACTION
FRAUD

68.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

69.    Defendants recklessly, knowingly, intentionally, and fraudulently misrepresented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, the safety and efficacy of the drug and/or recklessly, knowingly, intentionally and fraudulently concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, material, adverse information regarding the safety and efficacy of Bextra (Valedecoxib).

70.    Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, with the intent that they reach users and/or consumers of the drug, including Phyllis.

71.    Defendants either knew or should have known that the representations were false.

72.    Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of the drug with the intention and specific desire that the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, would rely on such in selecting Bextra (Valedecoxib) as a pain reliever.

FILED IN OFFICE

APR 1 8 2005

14

73.    Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valedecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

74.    Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff.  Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

    a.    There had been insufficient studies regarding the safety and efficacy of the drug;

    b.    The drug was fully and adequately tested, despite knowing that there had been insufficient or inadequate testing of the drug;

    c.    Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious prothrombotic and allergic and/or skin reactions, including, but not limited to, adverse cardiovascular events, and/or Stevens-Johnson Syndrome/toxic epidermal necrolysis;

    d.    Defendants knew or should have known of reports of increased heart attacks, allergic and/or skin reactions and/or strokes associated with the use of the drug;

    e.    Defendants knew or should have known of the greatly increased risk of developing heart attacks, allergic and/or skin reactions and/or strokes associated with use of Bextra (Valedecoxib); yet, despite this they were downplaying the risk of the drug.

75.    The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representatives, employees, distributors, agents and/or detail persons.

15

FILED in OFFICE
APR 1 8 2005
*illegible signature*
CLERK

76.    The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.    Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and serious side effects associated with the use of Bextra (Valedecoxib).    Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Bextra (Valedecoxib) in a timely manner, yet they failed to provide such warning.

77.    PHYLLIS justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valedecoxib) to his detriment.

78.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, PHYLLIS sustained substantial injuries including, among other things, heart attack. These injuries caused extensive pain and suffering and severe emotional distress for Plaintiff, and substantially reduced Phyllis' ability to enjoy life.    In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

79.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, PHYLLIS has been injured in health, strength and activity and suffered physical injuries as well as mental anguish.    All of said injuries caused PHYLLIS intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

80.    As a result of Defendant's fraud, Plaintiff has suffered and will continue to suffer.

81.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, PHYLLIS required reasonable and necessary health care treatment and service and had incurred expenses therefore.

82.    By reason of the foregoing, PHYLLIS has been damaged by the wanton and willful recklessness of the Defendants who will be liable to Plaintiff.    The amount sought herein

16

FILED IN OFFICE

APR 1 8 2005

_Ronnie P_____
CLERK

exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

SEVENTH CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION

83.    Plaintiff repeats and realleges each of the allegations contained in the Complaint.

84.    Defendants negligently misrepresented or failed to exercise reasonable care in representing to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, the safety and efficacy of the drug and/or negligently concealed or failed to exercise reasonable care by concealing and failing to disclose to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Phyllis, material, adverse information regarding the safety and efficacy of Bextra (Valedecoxib).

85.    Defendants' misrepresentations were communicated to the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, with the intent that they reach users and/or consumers of the drug, including Plaintiff.

86.    Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Bextra (Valedecoxib) in its labeling, advertising, product inserts, promotional materials or other marketing efforts.

87.    Defendants either knew or should have known that the representations were false.

88.    Defendants knew or should have known that the misrepresentations and/or omissions concerning the safety and efficacy of the drug would be relied upon by the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, in selecting Bextra (Valedecoxib) as a pain reliever.

89.    Defendants made these misrepresentations and actively concealed adverse information at a time when Defendants knew or should have known that its drug product had defects, dangers and characteristics that were other than what Defendants had represented to the

17

FILED IN OFFICE

APR 1 8 2005

_[signature]_
CLERK

medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff. Specifically, Defendants misrepresented to and/or actively concealed from the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, that:

      a.      There had been insufficient studies regarding the safety and efficacy of the drug;

      b.      The drug was fully and adequately tested, despite the fact that there had been insufficient or inadequate testing of the drug;

      c.      Prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse cardiovascular events, allergic and/or skin reactions and strokes;

      d.      Defendants knew or should have known of reports of heart attacks associated with the use of the drug;

      e.      Defendants knew or should have known of the greatly increased risk of heart attacks, strokes, life threatening allergic and/or skin reactions and/or death and other serious and life threatening side effects associated with the drug; yet, despite this was downplaying the risks of the drug.

90.      The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, their sales representatives, employees, distributors, agents and/or detail persons.

91.      The misrepresentations of and/or active concealment by Defendants constitute a continuing tort. Indeed, through Defendants' product inserts, Defendants continued to misrepresent the potential risks and complications associated with Bextra (Valedecoxib). Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential

FILED IN OFFICE

APR 1 8 2005

*Bruce P......*
CLERK

18

risks and serious side effects associated with the use of Bextra (Valedecoxib) in a timely manner, yet it failed to provide such warning.

92.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and ingest Bextra (Valedecoxib) to his detriment.

93.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, Plaintiff sustained harm, including, among other things, heart attack. These injuries have caused extensive pain and suffering and severe emotional distress and substantially reduced Plaintiff's ability to enjoy life. In addition, the misrepresentations of Defendants caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

94.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, PHYLLIS was injured in health, strength and activity and suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages.

95.    As a direct, legal, proximate and producing result of the misrepresentations of Defendants, PHYLLIS required reasonable and necessary health care treatment and service and had incurred expenses therefore.

96.    As a result of the misrepresentations of the Defendants, Plaintiff has suffered and will continue to suffer.

97.    By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of these Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment

FILED IN OFFICE

APR 1 8 2005

19

interest at the legal rates, and that Plaintiff has such other and further relief, both general and special, at law and in equity, to which she may be justly entitled under the facts and attending circumstances.

_____
NAVAN WARD, JR. (WAR062)
ANDY D. BIRCHFIELD, JR. (BIR006)
PAUL SIZEMORE (SIZ004)


**OF COUNSEL:**

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile


### PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES

FILED IN OFFICE

APR 1 8 2005

CLERK

IN THE CIRCUIT COURT OF
COVINGTON COUNTY, ALABAMA

| | | |
|---|---|---|
| PHYLLIS MCCORD | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _CV05-103_ |
| | § | |
| G. D. SEARLE, LLC. | § | |
| (hereinafter "Searle") a subsidiary of | § | |
| PHARMACIA CORPORATION, | § | |
| (hereinafter "Pharmacia"), a Foreign | § | |
| Corporation; MONSANTO COMPANY; | § | |
| PFIZER, INC.; and fictitious Defendants | § | |
| A, B, C and D being those persons, firms | § | |
| or corporations whose actions, inactions, | § | |
| fraudulent suppression, fraud, scheme to | § | |
| defraud and/or other wrongful conduct | § | |
| caused or contributed to the Plaintiff's | § | |
| injuries and damages, and whose true | § | |
| names and identities are presently | § | |
| unknown to the Plaintiff but will be | § | |
| substituted by amendment when | § | |
| ascertained, | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 33 and 34 of the *Alabama Rules of Civil Procedure*, the Plaintiff propounds the following interrogatories and requests for production of documents to be answered by Defendants G.D. Searle, LLC, Pharmacia Corporation, Monsanto Company and Pfizer, Inc., (hereinafter "Defendants"), in the manner and form prescribed by law:

### Definitions

1.      "Documents" shall mean writing of every kind, source and authorship, both originals and all non-identical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you or

intended for or transmitted to any other person or entity, including, without limitation, any government agency, department, administrative entity or personnel. The term shall include handwritten, typewritten, printed, photocopied, photographic or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.

2.      For purposes of illustration and not limitation, the term "Documents" shall include: correspondence, transcripts of testimony, letters notes, reports, papers, files, books, records, contracts, agreements, telegrams, teletypes and other communications sent or received, diaries, calendars, logs, notes or memoranda of telephonic or face-to-face conversations, drafts, work papers, agendas, bulletins, notices, circulars, inserts, announcements, instructions, schedules, minutes, summaries, notes and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations, bills, statements and other records of obligations and expenditures, canceled checks, vouchers, receipts and other records of payments, ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data, analyses, statements, interviews, affidavits, printed matter (including published books, articles, speeches and newspaper clippings), press releases, charts, drawings, specifications, manuals, brochures and memoranda of all kinds to and from any persons, agencies or other entities.

3.      "Identify", when used in reference to a person, means to state that person's full name, name of his or her employer, job title or position, and that person's last known residence and business addresses and telephone numbers.

4.      Any reference to the word medicine, pharmaceutical, drug or product is intended to and shall mean those products known generally as "Bextra (Valedecoxib)" and any and all other

2

trade names or trade marks under which Bextra (Valedecoxib)" have been tested, sold or marketed.

### Interrogatories

1.    State the legal name of these Defendants, and the names and titles of all persons answering the following discovery on behalf of these Defendants.

2.    State the relationship between these Defendants and any other Defendants in this lawsuit. Produce any documents that are evidence of such relationship.

3.    Identify each employee or representative of these Defendants, or independent contractor, who had any responsibility for sales or marketing of Bextra (Valedecoxib) in Butler County, Alabama.   Intended to be included in the information sought by this interrogatory are the individuals responsible for sales and/or marketing on a statewide, regional and national level.  This requests specific areas, with specific boundaries, i.e., counties, cities, south or north of specific highways, etc. which were included in each representative's sales territory.

4.    State the revenue of these Defendants from the sale of Bextra (Valedecoxib), both cumulatively and for each year since it was first marketed in the United States.

    a.  And, for each person identified in Interrogatory 3 above, please list all revenues directly or indirectly attributable to each person's sales/marketing efforts within their territorial region.

5.    Identify each person, by name, current business and home address and telephone number, that is most knowledgeable about the following, substantive areas:

    a.  The development of Bextra, specifically including, but not limited to its alleged COX-2 selectivity, or COX-2 specific qualities.

    b.  Presentation of investigative new drug application to the FDA.

*FILED IN OFFICE*

*APR 1 8 2005*

3

c.  Presentation of new drug application (NDA) to the FDA, including all scientific/pharmacological/toxicological information included therein, as well as all adverse reports.

d.  The selection criteria for all study/investigative study patient participants, including each and every criteria considered for study participation.

e.  Marketing of Bextra internationally, nationally, regionally and within the State of Alabama, including, but not limited to, the frequency and context of all detail calls made within the State of Alabama, and by whom.

f.  Training of inside and outside detail/sales representatives.

6.  Identify each person whom you anticipate may testify as an expert witness in this action, and for each such person, state:

a.  The subject matter on which the expert is expected to testify.

b.  The substance of the facts and opinions to which the expert is expected to testify.

c.  A summary of the grounds for each opinion.

d.  All civil actions or other legal proceedings in which such person has testified, by deposition or at trial, since January 1, 1995, including for each action or proceeding the name of the case, the jurisdiction/court in which such action or proceeding is or was pending, the case number, name and address of opposing counsel, and whether the testimony was by deposition, at trial or other hearing, by affidavit or other sworn declaration, or any combination of the foregoing. In addition, produce a current resume, curriculum vitae or similar other detailed statement of the person's background and qualifications.



FILED IN OFFICE

APR 1 8 2005

4

7.   What instructions were given to your sales representatives for providing information to physicians or responding to physician inquiries about the risks or potential risks associated with Bextra?

8.   Did these Defendants prepare any information about Bextra for direct dissemination to the patient and/or his/her family, or for other direct advertising or marketing to consumers, including, but not limited to patient hand-out, instructions to doctors for answering patient inquiries, or videos?  If so, please produce copies of these materials, and for each set of materials, state the date of initial preparations and the inclusive dates during which such materials were to be used.

9.   State whether any cost-benefit or similar analyses were performed regarding Bextra.  If so, please produce copies of all documents reflecting or relating to any such analysis.

10.  Identify the names of the agencies, divisions, or committees or other groups within these Defendants' corporation that participated in the developing, manufacturing, distributing, and/or supplying of Bextra, and identify and state the duties of all persons who served on these committees and/or agencies.

11.  At any time prior to or during the development of Bextra did these Defendants conduct tests or studies of any type, the results of which contain, or possibly contain, or reflect information relative to the possibilities of complications and/or adverse effects which have occurred in patients following the use of Bextra?  If so, please state:

   a.   The number of any such tests or studies.

   b.   An accurate description of the tests, prototypes, protocols and/or designs.

   c.   The inclusive dates during which any and all such tests or studies were actually conducted.

   d.   The test numbers of each and all such tests.

FILED IN OFFICE

APR 1 8 2005

e.  The dates that the report of each such test or study was prepared.

f.  Describe in detail how each such test or study was conducted.

g.  Describe the results of all and each such tests or study with regard to information relative to the possibility of complications.

h.  Identify, for each test or study, all persons who conducted such test or study.

i.  The title or name of the test or study.

12.  Explain in detail the records, which these Defendants keep of consumer complaints that are made to it. Produce any and all copies of the complaints, regardless of the manner in which originally made, relating to Bextra.

13.  Give the name, address, and job title of the person employed or retained by these Defendants most familiar with maintaining the records of consumer complaints or adverse event reports that are made regarding Bextra.

14.  State the full extent of these Defendants' knowledge relating to the hazards, contraindications, side effects and adverse effects, reactions or events relating to the use of Bextra.

15.  Did these Defendants have specific and/or express knowledge of <u>any</u> adverse events (possibly, probably, or definitely causally related to Bextra in the opinion of, or as concluded, determined, or diagnosed by the reporting source, i.e., the reporting/prescribing/treating physician, any principal or co-investigator, not in the opinion, or as concluded, determined, or diagnosed by Defendants) related to Bextra reported or received from any sources within, or outside the U.S., including but not limited to, Japan, the Philippines, Great Britain, Australia, Europe, South America, Central America, North America or New Zealand at any time prior to the submission of the NDA for Bextra?

FILED

APR 1 8 2005

*Ronald A. Ronce*

CLERK

6

This interrogatory includes, but is not limited to, any adverse event reports or information from foreign human Bextra clinical trials, post-marketing reports or medical journals, seminars, letters, memos, correspondence, personal notes, e-mails or other forms of electronic data transmission. This request includes <u>any</u> information regarding adverse events which were potentially related to Bextra, whether contained or included in the standard U.S. adverse event report form, or a similar form or method of reporting adverse drug events which are used in foreign countries, including but not limited to Japan, Australia, the Philippines, Great Britain, South America, Central America, North America, New Zealand or Europe.

16. Please state the date on which Bextra was first marketed in any county, identifying country with date.

17. Please identify for these Defendants, for themselves or any of their associated companies, divisions, officers and/or employees, all fines, sanctions, fees or penalty assessments of any type paid to any governmental agency or regulatory authority that in any manner relates to the development and marketing of any drug or pharmaceutical product. Your answer should include information identifying each such payment made by these Defendants, for themselves or any of their associated companies, divisions, officers and/or employees from January 1, 1990 to the present, including the payee, the date of the payment, the amount and how such payment was identified or charged off in the Defendants' accounting records.

18. Identify by name, address, telephone number, and employer of each person who, on behalf of these Defendants, had <u>any</u> contact with employees of the FDA regarding Bextra. This interrogatory is intended to encompass and extend beyond a request for the names of employees of Defendants, and is specifically intended to include, but not be

FILED IN OFFICE

APR 18 2005

7

limited to, independent contractors and lobbyists that had <u>any</u> contact with the FDA regarding Bextra, whether prior to, during the pendency of, or subsequent to the submission of the NDA relative to Bextra.

19. Identify by name, address, telephone number, and employer each person who, on behalf of these Defendants, had <u>any</u> contact with members of Congress or the Senate, or any individual on a Congressperson's or Senator's paid or volunteer staff regarding Bextra. This interrogatory is intended to encompass and extend beyond a request for the names of employees of Defendants, and is specifically intended to include, but not be limited to, independent contractors and lobbyists that had <u>any</u> contact with members of Congress or the Senate, or any individual on a Congressman's or Senator's paid or volunteer staff, regarding Bextra, whether prior to, during the pendency of, or subsequent to the submission of the NDA relative to Bextra.

20. Identify by name, address, telephone number, and employer each person who, on behalf of these Defendants, had <u>any</u> contact with members of the Health Care Financing Administration (HCFA) regarding Bextra. This interrogatory is intended to encompass and extend beyond a request for the names of employees of Defendants, and is specifically intended to include, but not be limited to, independent contractors and lobbyists that had <u>any</u> contact with members if the Health Care Financing Administration (HCFA) regarding Bextra, whether prior to, during the pendency of, or subsequent to the submission of the NDA relative to Bextra.

21. Give the name, address, and job title of the person employed or retained by these Defendants most familiar with maintaining any and all post-marketing studies, whether initiated, funded or conducted by these Defendants or some other source or entity.

FILED IN OFFICE
APR 1 8 2005

8

22.   For each clinical study and/or protocol that was performed in reference to Bextra by or on behalf of Defendants, or any Pfizer, Inc. related entity, please provide:

    a.   the name, designation or other identifying information about the clinical study/protocol;

    b.   whether the said clinical study/protocol was published;

    c.   if said clinical study/protocol was published, where was it published (what journal) and when was it published?

## **Requests for Production**

Plaintiffs specifically request that these Defendants produce the following:

1.   The protocol(s) established by Defendants, for the clinical testing of Bextra.

2.   The written procedures established by Defendants at any time during the development and marketing of Bextra to address reports Defendants or others received from clinical trials or post-marketing experience concerning:

    a.   Any abnormal kidney function tests.

    b.   Any other indicators concerning kidney toxicity.

    c.   Any reports of renal failure.

    d.   Any reports of congestive heart failure.

    e.   Any reports of gastrointestinal bleeding/hemorrhage.

    f.   Any reports of other bleeding/hemorrhage.

    g.   Any reports of death.

    h.   Any reports of precipitous increases in systemic blood pressure.

    i.   Any reports of "myocardial infarctions" (MI).

    j.   Any reports of "cerebrovascular accidents" (CVA).

FILED IN OFFICE

APR 1 8 2005

_Randie Rawls_

CLERK

k.    Any reports of allergic and/ or skin reactions.

3.    The protocols, procedures and guidelines that were employed by Defendants at any time during the clinical trials and post-marketing experience with respect to how the Defendants responded or was to respond to reports received form:

a.    Consumers.

b.    Health professionals.

c.    Others.

4.    Records sufficient to identify each and every patent holder of the drug marketed as Bextra by name, address, the patent number, the manner in which Bextra is utilized in such patent.

5.    Each and every contract between these Defendants, other patent holders or others regarding the development, manufacturing and marketing of the drug Bextra.

6.    Copies of all advertising text – whether printed, published on the web, radio, television or otherwise – concerning the drug Bextra that was addressed to:

a.    Physicians.

b.    Pharmacists.

c.    Consumers – in English text.

d.    Consumers – in Spanish or any other foreign language text.

7.    The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in the development of the drug Bextra.  These costs are to be itemized by line item in the manner in which the Defendants accounted internally for its costs and not summarized in any manner beyond those totals or sub-totals created in the Defendants' accounting records.

*FILED IN OFFICE*

*APR 1 8 2005*

*CLERK*

8. The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in conducting its clinical trials of Bextra.

9. The Defendants' records of account that demonstrate the costs incurred or otherwise paid by the Defendants in presenting the drug Bextra to the Federal Drug Administration. This request includes, but is not limited to, all costs incurred or otherwise paid by the Defendants to apply for "fast track" status, to present information to the advisory panel(s), to hire consultants (including counsel) or representatives and other incidental costs.

10. All adverse reports maintained by the Defendants regarding Bextra.

11. The complete records of each investigation conducted by the Defendants, or on behalf of the Defendants, in response to the reports responsive to Request for Production 10 above.

12. True and complete copies of all press releases and public statements made by the Defendants or on its behalf with regard to Bextra from its inception to the present.

13. True and complete copies of the transcripts of any/all statements and appearances made by or on behalf of these Defendants before the Federal Drug Administration concerning Bextra.

14. True and complete copies of the records of all proceedings of the FDA – whether advisory panel or otherwise – concerning Bextra that are in the possession of Defendants or its agents.

15. The complete text of all drafts and final versions of the product information leaflets or brochures that were intended for publication or other distribution to doctors, pharmacists and/or consumers concerning Bextra.

16. The complete text of all drafts and final versions of correspondence that Defendants directed to physicians concerning Bextra from its inception to the present.

11

17. The complete text of all drafts and final versions of statements that Defendants have made to its stockholders concerning the development and marketing of Bextra, any adverse effect reports and/or any FDA mandated warnings that were to accompany Bextra.

18. The Defendants' records showing its projection of sales of the drug Bextra in any and all markets. These records are to be produced in the most detail accumulated by Defendants in the ordinary course of business

19. The Defendants' records showing the actual sales of the drug Bextra in any and all markets. These records are to be produced in the most detail accumulated by Defendants as well as any summaries of that data, kept in the ordinary course of business.

20. All insurance agreements or policies under which a person transacting insurance may be liable to satisfy part or all of a judgment which may be entered in this civil action or to indemnify or reimburse for payments made to satisfy the judgment. It is further requested that a verified or attested copy of the declaration sheet relating to any of the aforementioned insurance policies also be produced.

21. All documents or records of the Defendants relating to any advertisements for Bextra, whether in professional journals or not.

22. All documents concerning any warnings, instructions for use, or other matters concerning the use and/or consumption and possible health risks regarding Bextra.

23. All correspondence and documents evidencing any communication, in any form between or among any and all of the Defendants concerning Bextra.

24. All drafts of documents containing instructions or warnings for the ultimate consumers of Bextra. (For each such document, state the effective date or inclusive dates for distribution of use of such instructions or warnings.)

FILED IN OFFICE

APR 1 8 2005

12

25. All documents concerning any changes, modification, alteration, and/or reformation of Bextra, including changes to product packaging and product inserts.

26. All documents of the Defendants showing quality control, testing, analysis and health studies such as indications, contradictions, side effects, interactions, and adverse experiences, effects, or events concerning Bextra.

27. All agreements entered into between or among any of the Defendants.

28. All published literature in the possession of the Defendants concerning Bextra.

29. Any documents of which Defendants has knowledge of concerning or relating to the adverse reactions, experiences, effects or events regarding Bextra.

30. All documents relating to adverse reaction, experiences, effect or event reports as well as investigations of the same, including all notes, memos, letters, reports, files, articles, or any written or computer generated or stored information from any person or source whatsoever, authored as a consequence of the result of any such investigation which discusses, relates or concerns the adverse reaction of Bextra.

31. All documents sent to the FDA regarding Bextra.

32. All documents received from the FDA concerning Bextra.

33. Copies of any warnings, precaution, informational letters, promotions, detail ads, which discuss Bextra. (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

34. Copies of all 10K's filed by or concerning these Defendants from 1990 through the present.

35. Copies of all annual reports to shareholders of these Defendants from 1990 through the present.

FILED IN OFFICE

APR 1 8 2005

13

36.    Copies of all package inserts for Bextra. (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

37.    Copies of all documents which indicate, discuss or show the following:

    1.    Gross sales of these Defendants, cumulatively and/or for each year since Bextra was first marketed in the United States.

    2.    Gross sales for Bextra, cumulatively and/or for each year since Bextra was first marketed in the United States.

38.    Please identify the full names and corporate titles and addresses of the employees of these Defendants having the most significant responsibilities for the development, licensing and marketing of Bextra, and as to each such person, state the job titles, the inclusive dates during which such person held that job title, and describe briefly the area of responsibility with respect to Bextra.

39.    Please provide the text of any and all warnings or instructions to physicians and/or patients and consumers about the adverse effects in connection with Bextra, and explain in detail any variation in terminology regarding side effects, contraindications, precautions and warnings. (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

40.    Any and all studies regarding the safety and effectiveness of Bextra.

41.    All reports and other documents provided to the FDA or other governmental organization regarding complications, contraindications, hazards, side effects, or adverse experiences, effects or events from the use of Bextra, whether used as monotherapy or in conjunction with any other therapy.

*FILED IN OFFICE*

*APR 1 8 2005*

42.    Provide a detailed privilege log of all documents that have been removed from any file or not produced because of a claimed privilege, work product doctrine, trade secret or

confidential business information, or other privilege or basis for nondisclosure. Identify each document with such specificity that Plaintiff may fashion a particularized motion to compel as to each non-disclosed document.

43. If these Defendants have relied upon or referred to any document in answering any interrogatory, please attach copies of each such document to your answers.

44. Documents reflecting the exact total number of patients worldwide, including but not limited to those in Japan, the U.S., the Philippines, Australia, Great Britain, Europe, South America, Central America, North America and New Zealand, which Defendants determined, concluded, acknowledges, admits, concedes, or in its own opinion, believes or suspects, died from or suffered myocardial infarction, cerebrovascular accidents, allergic and or skin reactions, or internal bleeding, caused by Bextra from the date the NDA for Bextra was submitted to the FDA on, through and including the date of these Defendants' response to this discovery.

This includes deaths which occurred during human clinical trials or during the post-marketing period in any foreign country including, but not limited to, the Philippines, Australia, Great Britain, Europe, South America, Central America, North America and New Zealand. This includes any patients who were withdrawn from any clinical trial for any reason, medical or otherwise, whether or not the Defendants believe the injury or deaths as causally related to Bextra.

45. A copy of the entire patient case study file and medical records, including autopsy reports, for each death case included in the response to the preceding request (#44), including the patient study number.

FILED IN OFFICE

APR 1 8 2005

_[signature]_
CLERK

15

This request does not include any personal identification information about each patient. Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege.

46.    Documents reflecting the exact total number of worldwide patients which Defendants determined, concluded, acknowledges, admits, concedes, or in its own opinion, believes or suspects experienced any adverse events, including, but not limited to, death, myocardial infarction, cerebrovascular accidents, allergic and/ or skin reactions, hypertension or increased hypertension, or gastro intestinal or esophageal bleeding, as a result of Bextra at any time from the date of the first human Bextra clinical trials and post-marketing experience, whether conducted in the U.S. or abroad, including but not limited to Japan, Great Britain, the Philippines, Australia, Europe, South America, Central America, North America and New Zealand to the date of this request which were reported to the FDA in the IND/NDA for Bextra.

This includes any patients who were withdrawn from any clinical trial for any reason-medical or otherwise, whether or not Defendants believe the abnormalities were causally related to Bextra.

47.    A copy of the entire patient study file and medical records for each patient identified in the preceding request (#46) who were reported to the FDA in the IND/NDA to Bextra. This request does not include any personal identification information about the patients. Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege.

FILED IN OFFICE

APR 1 8 2005

48.    Documents reflecting the total number of clinical trial patients who began each separate human Bextra clinical study, including, but not limited to those within the U.S., Japan, Great Britain, the Philippines, Australia, Europe, South America, Central American,

16

North America and New Zealand who were withdrawn from the study or did or did not complete it for any reason, regardless whether or not Defendants believe the reason for the withdrawal was not causally related to Bextra. Please identify the patient study number of each patient who was withdrawn.

49. A copy of the entire patient case study file and medical records for each patient who was withdrawn or otherwise did not complete the clinical trial who is included in the preceding request (#47). This request does not include any personal identification information about the patients. Please redact names, addresses, dates of birth, social security numbers, etc., so as to not violate the patient privacy or physician-patient privilege.

50. All tangible and electronic correspondence sent to and received from any person involved in each separate clinical trial study for Bextra worldwide, including, but not limited to, the U.S., Japan, the Philippines, Australia, South America, Central America, North America and New Zealand, including, but not limited to, principal investigators, co-investigators, co-investigators, sub-investigators, technicians, their staff or any other person who in any way participated in the clinical trials. This includes, but is not limited to, any and all letters, reports, e-mails or any other source tangible data transmission, whether electronic or otherwise.

This includes, but is not limited to, adverse events, general observations of results during trials, preliminary study reports, or any other reference to results, problems, successes, general correspondence about Bextra, observed during clinical trials.

FILED IN OFFICE

APR 1 8 2005

51. All tangible and electronic internal correspondence, person specific and/or general, including but not limited to, memos, e-mails, or other electronic data transmissions, to and from all sales and marketing personnel employed by, retained by, associated with or

17

in any way affiliated with Defendants, which in any way discusses, relates to, or involves potential safety concerns with prescribing physicians and pharmacists, sales strategies, marketing and advertising regarding Bextra.

52.    An entire copy of each and every Bextra patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by or reported to Defendants prior to February 28, 2001, from any source, including, but not limited to, human Bextra clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand which Defendants determined or concluded was definitely, probably, or possibly, not causally related to Bextra and which was not included in the IND/NDA for Bextra or reported or provided to the FDA thereafter through the date of this request.

53.    An entire copy of each and every Bextra patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants, from any source, including, but not limited to, human Bextra clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand, which Defendants determined was definitely, probably, or possibly, not causally related to Bextra and which was not reported or provided to the FDA thereafter through the date of this request.

FILED IN OFFICE

APR 1 8 2005

54.    An entire copy of each and every Bextra patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants, from any source, including, but

18

not limited to, human clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand, which Defendants determined <u>was</u> definitely, probably, or possibly causally related to Bextra and which was <u>not</u> included in the IND/NDA for Bextra, or reported to the FDA thereafter through the date of this request.

55.    An entire copy of each and every Bextra patient case study file, including, but not limited to, the patient's medical records and the adverse event report, for each and every adverse event report ever received by, or reported to Defendants from any source, including, but not limited to, human Bextra clinical trial studies, both within the United States and abroad, including, but not limited to, Japan, the Philippines, Australia, South America, Great Britain, Europe, Central America, North America and New Zealand, which Defendants determined <u>was</u> definitely, probably, or possibly causally related to Bextra and which was reported to the FDA thereafter through the date of this request.

56.    Any and all internal memos, internal or external correspondence and e-mails, including, but not limited to, any form of electronic data transmission to, or from Defendants, including, but not limited to, any employee, agent, director, officer or other personnel under the direct control of Defendants, to, or from, any other personnel, including, but not limited to, any persons involved in the clinical trials for Bextra, other clinical researchers, physicians, patients, the FDA or any other regulatory agency, or any other Defendants herein, which in any way discuss, involve, or relate to the decision to market Bextra, and specifically as a COX-2 selective NSAID medication. This includes all information generated from the date of the first report of adverse events in the U.S. or abroad, through the date of this request.

FILED IN US OFFICE

APR 1 8 2005

19

57.   Any and all internal correspondence, memos and e-mail or other electronic data transmission, to the date of this request, to or from Defendants' sales and marketing staff and personnel, including, but not limited to, Bextra drug sales representatives, detail personnel and their managers, which in any way relates to, involves, or discusses what information regarding adverse events, should or should not be provided to, or discussed with, prescribing physicians, pharmacists or clinical investigators or their staff.

58.   Any and all correspondence, memos, e-mails or other forms of electronic data transmissions, to or from any external source (i.e., generated by someone who is not an agent, servant, employee, director, officer or other personnel under the direct control of Defendants), including, but not limited to, principal investigators and their staff, prescribing physicians or pharmacies, which in any way discusses, involves or relates to specific adverse events or general patient health concerns related to Bextra.

59.   Any and all internal memos, correspondence, e-mails or other electronic data transmissions to or from any agent, employee, officer, director or other person under the direct control of Defendants, or acting for or on Defendants' behalf, which in any way discusses, involves, or relates to the Defendants' denial of, conscious refusal to concede, admit, conclude, acknowledge, or express any opinion, publicly or privately, that Bextra caused any health problems or injuries.

60.   Documentation of any and all direct, or indirect, compensation paid to any principal or co-investigators, their staffs, families, or any other persons associated with the clinical trial studies of Bextra for any reason. This includes, but is not limited to, copies of direct cash payment vouchers, canceled checks, money orders, wire transfers, indirect compensation such as travel expenses, meals, entertainment, gifts or honorariums, and also including, but not limited to, any and all forms of valuable consideration including

FILED IN OFFICE

APR 1 8 2005

20

securities and equities in Defendants' company or any company legally associated or affiliated with Defendants' company, including, but not limited to, stock ownership, options, warrants, bonds or other securities, which the recipient realized a tangible economic value at the time of the receipt or thereafter.

61.   Documentation of any and all direct, or indirect, compensation paid to any physicians, their staffs, families, or any other persons associated with the clinical trial studies of Bextra for any reason. This includes, but is not limited to, copies of direct cash payment vouchers, canceled checks, money orders, wire transfers, indirect compensation such as travel expenses, meals, entertainment, gifts or honorariums, and also including, but not limited to, any and all forms of valuable consideration including securities and equities in Defendants' company or any company legally associated or affiliated with Defendants' company, including, but not limited to, stock ownership, options, warrants, bonds or other securities, which the recipient realized a tangible economic value at the time of the receipt or thereafter.

62.   A copy of all expenses related to travel and entertainment (as defined by the applicable Internal Revenue Code Section) paid by Defendants directly, or indirectly, to, or on behalf of any clinical investigation personnel, their staff or families, associated with the clinical trial studies of Bextra. This includes, but is not limited to, payment for any and all expenses related to seminars conducted or sponsored, in whole or in part, by these Defendants, their wholly owned subsidiaries, products, drugs or services; gratuitous tickets to entertainment events such as sporting events, arts, general entertainment (operas, plays, etc.), payment for meals, personal gifts or any other goods or services in which the recipient received an indirect economic benefit.

FILED IN OFFICE

APR 1 8 2005

*(signature)*
CLERK

21

63.  A copy of the minutes of each and every committee meeting held by Defendants that in any way related to Bextra, including, but not limited to, pre-marketing safety concerns, adverse events, marketing strategies, potential market penetration, potential profits, potential sales, strategies regarding how to respond to and deal with FDA concerns, strategies to persuade any person that adverse events related to Bextra were not serious and should be dismissed, ignored or downplayed; package insert revision discussions, or any other subject matter related to the research, development, marketing, sales and safety concerns relating to Bextra.

64.  Any and all documentation of the account of the gross and net profits, including all incurred expenses, received by, and incurred by Defendants, relating to the sale and marketing of Bextra worldwide.  This specifically requests the Defendants' own accounting calculations of gross sales, expenses, net profits and other financial effects or impacts of Bextra on Defendants' ongoing profits and operation, on an annual basis from 1999 to the date of this request.

65.  All information sent by Defendants to pharmacies or drug distribution centers within the U.S. which in any way relate to, involve, or discuss Bextra from January 1, 1998, through the date of this request.  This includes, but is not limited to, letters, announcements, reports, original package inserts and all revisions, and adverse event reports.  (For each such document, state the effective date or inclusive dates for distribution or use of such document.)

66.  A copy of all licensing agreements between these Defendants and any other entity relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Bextra.

FILED IN OFFICE

APR 1 8 2005

*[signature]*

CLERK

67.   A copy of all marketing agreements between these Defendants and any other entity relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Bextra.

68.   A copy of all profit sharing, expense sharing or other financial agreements between these Defendants and any other entity, relating to the research and development, production, distribution, sales and marketing, or other mutual involvement relating to Bextra.

69.   Any and all partnership agreements, joint venture agreements, co-development agreements, or other documented legal agreements between Defendants and any other entity regarding the research and development, distribution, sales and marketing or other involvement of Bextra.

70.   Any and all written settlement agreements with any plaintiff or claimants, whether based on pre-litigation claims or filed lawsuits relating to, or involving allegations that health related injuries were caused by Bextra, whether within the U.S. or other foreign country.

71.   The original petition(s) or complaint(s), including style, cause number and all plaintiffs or claimants of all lawsuits ever filed against Defendants relating to allegations that Bextra caused injury or adverse events, whether in the U.S., or abroad.

72.   Produce all memos, documents, tables, graphs, tests, test results or other illustrative or explanatory material by whatever name known or characterized by these Defendants in their normal course of business, which discusses or illustrates the relationship between COX-2 selectivity and therapeutic dosing.

73.   Documents reflecting all epidemiological, clinical or double-blind placebo trial, test or study results that document or illustrate the relationship between COX-2 selectivity of Bextra and therapeutic dosing levels.

FILED IN OFFICE

APR 1 8 2005

*Ray..l a Ruca*
CLERK

23

74.  Documents reflecting any and all post marketing surveys or studies completed by these Defendants regarding Bextra whether or not the post marketing study or survey was undertaken, performed or funded by these Defendants.

75.  Any and all documents, letters correspondence, e-mail, facsimile, press release or other written, verbal, electronic or other communication made by Defendants, or any employee, agent, representative, independent contractor or otherwise, acting on their behalf, that was transmitted or communicated from Defendants to any news industry or financial industry representative, or with the knowledge that the ultimate recipient would be a person acting for or on behalf of any person, firm or corporation within the news or financial industry.  This request is intended to included, but not be limited to, all communications by or on behalf of Defendants and members of the print and broadcast news industry and the members of the financial industry; including, but not limited to, news, press or financial information; product launch information; or INDA/NDA information disseminated to ABC, NBC, CBS, CNBC, FOX, Fox News, The Wall Street Journal, Fortune Magazine, Money Magazine, any other financial or non-financial newspaper, periodical or publication, any bank, brokerage house/firm, or other financial institution or institutional investment corporation, whether for purposes of stock/bond underwriting, pursuant to financing conditions of underwriting or not, or for general dissemination of product news.

NAVAN WARD, JR. (WAR062)
ANDY D. BIRCHFIELD, JR. (BIR006)
PAUL SIZEMORE (SIZ004)

FILED IN OFFICE

APR 1 8 2005

24

**OF COUNSEL:**

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343 telephone
(334) 954-7555 facsimile

**SERVED UPON DEFENDANTS WITH SUMMONS & COMPLAINT**

FILED IN OFFICE

APR 1 8 2005

25